Richard J. Wittbrodt, Esq., CSB # 138829
E-Mail: rwittbrodt@gglts.com
Lynsey M. Eaton, Esq. CSB # 261282
E-Mail: leaton@gglts.com
**GIBBS, GIDEN, LOCHER, TURNER & SENET LLP**
1880 Century Park East, 12th Floor
Los Angeles, California 90067-1621
Telephone: (310) 552-3400
Facsimile: (310) 552-0805
(#0216.350)

Attorneys for TRISTAR DISTRIBUTING, INC.

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE DIVISION

| | |
|---|---|
| IN RE:<br><br>FLEETWOOD ENTERPRISES, INC., et al.<br><br>Debtors.<br><br>FLEETWOOD ENTERPRISES, INC., ET AL. and OFFICIAL COMMITTEE OF CREDITORS HOLDING UNSECURED CLAIMS, on behalf of the Debtors' estates,<br><br>Plaintiffs,<br><br>v.<br><br>TRISTAR DISTRIBUTING, INC.<br><br>Defendant, | Case No.: 09-14254-MJ<br>Adv. Pro. No.: 6:09-ap-01381-MJ<br><br>CHAPTER 11<br><br>**TRISTAR DISTRIBUTING, INC.'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Jointly Administered]<br><br>Date: November 12, 2009<br>Time: 10:00 a.m.<br>Courtroom: 302<br><br>[Filed concurrently with (1) Declaration of Robin Bellaire in Support; (2) Separate Statement of Uncontroverted Facts; (3) Request for Judicial Notice] |

///
///
///
///
///
///
///

*DEFENDANT'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT*

831274_2

| | |
|---|---|
| 1 | **TO ALL DEFENDANTS AND THEIR RESPECTIVE ATTORNEYS OF** |
| 2 | **RECORD**: |

PLEASE TAKE NOTICE THAT on November 12, 2009, at 10:00 a.m., in Courtroom 302, of the above referenced Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant, TRISTAR DISTRIBUTING, INC. ("TriStar") will and hereby does move for partial summary judgment as to FLEETWOOD ENTERPRISES, INC., et al.'s Adversary Complaint.

TriStar moves on the grounds that there is no genuine issue of material fact. As such, TriStar is entitled to partial summary judgment in its favor, and against Plaintiffs on Counts II, III, and IV of the Adversary Complaint.

If summary judgment is not awarded on all of the issues identified, TriStar moves, in the alternative, for a determination of the material facts that exist without substantial controversy and the material facts that are actually and in good faith controverted in accordance with FRCP 56(d).

This motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the declaration of Robin Bellaire, the Separate Statement of Undisputed Material Facts filed concurrently herewith, the Request for Judicial Notice filed concurrently herewith and all pleadings and papers on file in this action, and upon such other matters as may be presented to the Court at or prior to the time of the hearing, including any matters of which the Court takes judicial notice.

DATED: September 17, 2009      GIBBS, GIDEN, LOCHER, TURNER & SENET LLP

By: _____
Lynsey M. Eaton
Attorneys for TRISTAR DISTRIBUTING, INC.

# TABLE OF CONTENTS

| | | Page(s) |
|---|---|---|
| I. | SUMMARY OF ARGUMENT | 2 |
| II. | RELEVANT FACTS | 3 |
| III. | SUMMARY JUDGMENT STANDARD | 6 |
| IV. | LEGAL ARGUMENT | 6 |
| | A. TO PREVAIL ON COUNTS II, III, OR IV, PLAINTIFFS MUST DEMONSTRATE, *INTER ALIA*, THAT FLEETWOOD HOLDINGS, INC. DID NOT RECEIVE REASONABLY EQUIVALENT VALUE IN EXCHANGE FOR THE TRANSFERS IT MADE TO DEFENDANT | 7 |
| |     1. Count II | 7 |
| |     1. Count III | 8 |
| |     2. Count IV | 8 |
| | B. FLEETWOOD HOLDINGS, INC. RECEIVED REASONABLY EQUIVALENT VALUE IN EXCHANGE FOR THE TRANSFERS MADE TO THE DEFENDANT | 8 |
| |     1. Reasonably Equivalent Value is evaluated using the same standard under the California Uniform Fraudulent Transfer Act and the Bankruptcy Code | 8 |
| |     2. Standard for determining reasonably equivalent value. | 9 |
| |     3. As the sole owner of each of the Debtor Subsidiaries, Fleetwood Holdings, Inc. received "roughly the same value it gave" for each of the transfers. | 10 |
| |     4. Fleetwood Holdings, Inc.'s payments to Defendant resulted in a discharge of Fleetwood Holdings, Inc.'s own debt to the debtor subsidiaries, and, accordingly, it received reasonably equivalent value. | 11 |
| | C. EVEN IF FLEETWOOD HOLDINGS, INC. DID NOT RECEIVE REASONABLY EQUIVALENT VALUE FOR ITS PAYMENTS TO DEFENDANT, IT CANNOT PROVE THE REMAINING ELEMENTS OF A CONSTRUCTIVELY FRAUDULENT TRANSACTION | 14 |
| V. | CONCLUSION | 14 |

GIBBS, GIDEN, LOCHER, TURNER & SENET LLP

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Abromson v. American Pacific Corp.*,
   114 F.3d 898, 902 (9th Cir. 1997) ..........................................................................6

*AFI Holding, Inc. v. Mackenzie*,
   525 F.3d 700, 707 (9th Cir. 2008) (Cal.Civ.Code § 3439.04(a)(2)) ........................9

*Celotex Corp. v. Catrett*,
   477 U.S. 317, 323 (1986) ..........................................................................................6

*Coors of N.Miss v. Bank of Longview (In re Coors of N. Miss.)*,
   66 B.R. 845, 862 (Bankr.N.D.Miss. 1986) ..............................................................12

*Harker v. Center Motors, Inc. (In re Gerdes)*,
   246 B.R. 311, 313 (Bankr. S.D. Ohio 2000) ............................................................9

*In re Image Worldwide, Ltd.*,
   139 F.3d 574, 577 (7th Cir. 1998) ............................................................................9

*In re Metro Communications, Inc.*,
   95 Bankr. 921, 933 (Bankr.W.D.Pa. 1989), rev'd on other grounds, 945 F.2d 635 (3d Cir. 1991) ..............................................................................................................11

*In re Minnesota Utility Contracting, Inc.*,
   101 B.. 72 (Bankr.D.Minn. 1989) ..........................................................................13

*In re Newtowne, Inc.*,
   157 B.R. 374, 378-79 (Bankr.S.D.Ohio 1993) ..................................................11, 12

*In re Pembroke Dev. Corp.*,
   124 B.R. 398, 400 (Bankr. S.D.Fla. 1991) ........................................................12, 13

*Lujan v. National Wildlife Fed'n*,
   497 U.S. 871, 888 (1990) ..........................................................................................6

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574, 587 (1986) ..........................................................................................6

*Mellon Bank v. Metro Communications, Inc. (In Re Metro Communications, Inc.)*,
   945 F.2d 635, 646 (3d Cir. 1991) ......................................................................10, 11

*Pajaro Dunes Rental Agency v. Spitters (In re Pajaro Dunes Rental Agency)*,
   174 B.R. 557, 579 (Bankr.N.D.Cal. 1994) ..........................................................9, 10

*Rubin v. Manufacturers Hanover Trust Co.*,
   661 F.2d 979, 991-994 (2d Cir. 1981) ....................................................................10

*Smith v. American Founders Financial, Corp.*,
   365 B.R. 647, 666 (S.D.Tex. 2007) ..........................................................................9

i

# TABLE OF AUTHORITIES

Page(s)

*T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,*
   809 F.2d 626, 631 & n.3 (9th Cir. 1987) ..................................................................6

*Uiterwyk Corporation v. Maher Terminals, Inc. (In re Uiterwyk Corporation),*
   75 B.R. 33 (Bankr.M.D.Fla. 1987) ..........................................................................12

*VFB, LLC v. Campbell Soup Co.,*
   482 F.3d 624, 630-31 (3d Cir. 2007) ..............................................................9, 10, 11

**STATUTES**

11 U.S.C. § 503 ..........................................................................................................2, 5, 6

11 U.S.C. § 544(b) ..............................................................................................................7

11 U.S.C. § 548 ...............................................................................................8, 9, 10, 14

11 U.S.C. § 548(a)(1)(B)(I) ................................................................................................9

11 U.S.C. § 550 ..................................................................................................................8

Cal. Civ. Code § 3439 ........................................................................................................7

Cal. Civ. Code § 3439.04 ...................................................................................................7

Cal. Civ. Code §§ 3439.04(2) and 3439.05 .......................................................................7

Cal. Civ. Code § 3439.05 ................................................................................................7, 8

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56 ................................................................................................................1

Fed. R. Civ. P. 56(c) ...........................................................................................................6

Fed. R. Civ. P. 56(d) ...........................................................................................................1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. SUMMARY OF ARGUMENT

Defendant supplied certain of the Debtors with building materials and flooring for Debtors' manufacturing. Defendant would invoice Debtors each individually for product supplied. Each relevant Debtor was a wholly owned subsidiary of Fleetwood Holdings, Inc.

Debtors collectively operated under a consolidated Cash Management System that processed all invoices to all of the Debtors and centralized payments from an account operated by Fleetwood Holdings, Inc. When Fleetwood Holdings, Inc. made a payment on behalf of another Debtor, an intercompany receivable and payable would be created.

On the day Fleetwood Enterprises, Inc. and the Debtor Subsidiaries filed their Jointly Administered Chapter 11 Bankruptcy, they filed an "Emergency Motion for an Order Authorizing (A) Continued Use of Cash Management System and Bank Accounts". (Request for Judicial Notice, Ex. 1). This Court granted Debtors' Motion on March 13, 2009. (Request for Judicial Notice, Ex. 2).

Incredibly, Plaintiffs have filed a Complaint seeking to avoid each transfer made by Fleetwood Holdings, Inc. to Defendant over the last 4 years under the Cash Management System (over $6,400,000) as fraudulent (the "Complaint"). Presumably, if Plaintiffs' claims were with merit, that would mean that this Court, by its March 13, 2009 Order, sanctioned fraudulent transfers. By no mere coincidence, Plaintiffs have raised similar claims against Cast Products Corporation (Request for Judicial Notice, Ex. 5), AL-KO Kober Corporation (Request for Judicial Notice, Ex. 4), and BlueLinx Corporation (Request for Judicial Notice, Ex. 6). This is no coincidence as these are the only four of Debtors' creditors that filed for allowance and immediate payment of an administrative claim under 11 U.S.C. § 503.

Regardless of Plaintiffs' motives, Defendant has been placed in a position where it is forced to defend Plaintiffs' claims on the "merits." As such, to prove a fraudulent transfer, Plaintiffs must demonstrate that Fleetwood Holdings, Inc. did not receive reasonably equivalent value for the transfers.

Fleetwood Holdings, Inc., as the sole owner of each of the relevant Debtors, received, *de facto*, reasonably equivalent value for each transfer it made to the Defendant. In addition, Fleetwood Holdings, Inc. received reasonably equivalent value by virtue of the operation of the Cash Management System and by virtue of the payment of its debt service to Bank of America by its Debtor Subsidiaries. Accordingly, summary judgment is appropriate in favor of Defendant and against Plaintiffs on Counts II, III, and IV of Plaintiffs' Complaint.[1]

## II. RELEVANT FACTS

Before the Debtors filed this Chapter 11 bankruptcy proceeding, Defendant supplied certain of the Debtors with building materials and flooring. (Complaint ¶ 7). Specifically, Defendant provided product to Debtors Fleetwood Homes of Georgia, Inc., Fleetwood Homes of California, Inc., Fleetwood Homes of Florida, Inc., Fleetwood Homes of Idaho, Inc., Fleetwood Homes of Virginia, Inc., Fleetwood Travel Trailers of Indiana, Inc., Fleetwood Homes of Oregon, Inc., Fleetwood Motor Homes of Indiana, Inc., Fleetwood Homes of Indiana, Inc., Fleetwood homes of North Carolina, Inc., Fleetwood Homes of Pennsylvania, Inc., Fleetwood Motor Homes of California, Inc., Fleetwood Travel Trailers of Ohio, Inc., and Fleetwood Travel Trailers of Oregon, Inc. (collectively, the "Debtor Subsidiaries") (Complaint ¶ 9). Each of the Debtor Subsidiaries is wholly owned by Fleetwood Holdings, Inc. (Request for Judicial Notice, Ex. 2 at ¶ 9).

Defendant dealt with each Debtor Subsidiary individually in that it would sell product to a Debtor Subsidiary in accordance with a purchase order received from that specific Debtor Subsidiary. (Declaration of Robin Bellaire (Bellaire Decl.) ¶ 4). Defendant would then invoice the specific Debtor Subsidiary directly. (Bellaire Decl. ¶ 5). Payment would not come directly from the Debtor Subsidiary; rather, payments were made to Defendant in the form of a check from Fleetwood Holdings, Inc. (Bellaire Decl. ¶ 6). Defendant never requested that its payments be processed through Fleetwood Holdings, Inc. (Bellaire Decl. ¶

---

[1] Count I, seeking the avoidance and recovery of certain purported preference payments is not at issue in this Motion and Memorandum.

*DEFENDANT'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT*
831274_2

7). In fact, this system for processing payments was the creation of Debtors "to consolidate amounts owed across the plants to the same vendor into a single payment made to that vendor [Cast Products] from the Central Pay Account of Fleetwood Holdings, Inc." (Complaint ¶ 8). Each of the payments detailed in the Exhibits to Plaintiffs' Complaint represented the fair market value for materials sold and delivered to the Debtor Subsidiaries by Defendant. (Bellaire Decl. ¶ 8).

In fact, according to the Debtor Subsidiaries' own admission, the Cash Management System employed by the Debtor Subsidiaries was used by the Debtors for 59 years and "is a customary and essential business practice." (Request for Judicial Notice, Ex. 2 at ¶ 65-76). According to the Declaration of Andrew M. Griffiths, Fleetwood Holdings, Inc. would make payments on behalf of other debtor subsidiaries as follows:

> The Debtors centralize many of their payments using a centralized vendor payment system ("Central Pay") whereby trade payable balances owed by individual manufacturing entities ("Plants") are paid directly by FHI ["Fleetwood Holdings, Inc."] on behalf of those Plants. The Debtors have several vendors that provide raw materials and services to more than one Plant. Rather than have each plant remit multiple payments for amounts owed to the same vendor each week, Central Pay is used to consolidate amounts owed across the Plants to the same vendor in a single payment made to that vendor from the Central Pay Account at FHI. As a result of these practices, the Debtors save not only postage and fees from reduced check and wire payments, but also save on the administrative costs required to process multiple payments each week. Consolidating payments at FHI also provides the Debtors with greater centralized control over disbursements. Due to these benefits, over half of the Debtors' trade invoices paid in the second quarter of this year were paid through Central Pay.
>
> When a Central Pay payment is made, an intercompany receivable is created on FHI's books and an intercompany payable is created on the books for those Plants on behalf of which the payment was made. No cash payment is made between the Debtors to satisfy these intercompany balances, rather, the balances are netted upon consolidation at the end of every month.

(Request for Judicial Notice, Ex. 2 at ¶ 76). In addition to centralizing disbursements, the Cash Management System also ensures that all accounts receivable from any of the Debtor

4
*DEFENDANT'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT*
831274_2

entities flows into an account operated by Fleetwood Holdings, Inc. (Request for Judicial Notice, Ex. 2 at ¶ 66). As detailed in the Griffiths Declaration, the Debtors maintain a single bank account which collects *all receipts received by the Debtors*. (Request for Judicial Notice, Ex. 2 at ¶ 66, emphasis added). This account, maintained at Bank of America, applies all receipts collected into the account first to any outstanding Secured Credit Facility loan balance with Bank of America and then is distributed out to Fleetwood Holdings, Inc. (Request for Judicial Notice, Ex. 2 at ¶66).

On the day Fleetwood Enterprises, Inc. and the Debtor Subsidiaries filed their Jointly Administered Chapter 11 Bankruptcy, they filed an "Emergency Motion for an Order Authorizing (A) Continued Use of Cash Management System and Bank Accounts". (Request for Judicial Notice, Ex. 1). This Court granted Debtors' Motion on March 13, 2009. (Request for Judicial Notice, Ex. 3).

Through their Complaint, Debtors and the Creditors' Committee seek to avoid and recover, as fraudulent, each payment made by Debtors to Defendant for the past 4 years, a total of over $5,800,000 through Debtors' "centralized", "customary and essential" Cash Management System. (Complaint). By Debtors' own acknowledgement, over 55% of all payments made to all creditors were made under the Cash Management System through Fleetwood Holdings, Inc. (Request for Judicial Notice, Ex. 2 at ¶ 76).

It is unclear whether the Debtors and the Creditors Committee will also seek to recover all other sums paid to all other creditors of the Debtors under the Cash Management System over the past 4 years. This seems unlikely as the only creditors that have been sued for these alleged "fraudulent transfers" are the creditors that have moved this Court for payment of their § 503 administrative claim arising out of their demand for reclamation. (Request for Judicial Notice ¶¶ 4-6).

It is also unclear whether the Debtors will seek to avoid all transfers made under the court-approved Cash Management System post-bankruptcy. This seems unlikely as it was court-approved and is still used to this very day.

///

5

*DEFENDANT'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT*

831274_2

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party has sustained its burden, the nonmoving party must then identify specific facts, drawn from materials on file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested. See Fed. R. Civ. P. 56(c). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990). See also *Celotex Corp.*, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. See also *Abromson v. American Pacific Corp.*, 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## IV. LEGAL ARGUMENT

Once again, it is Defendant's contention that Plaintiffs have brought their claims in this action, including their claims under Counts II, III, and IV of the Complaint, to interfere with Defendant's § 503 rights to immediate payment of their administrative claim. Plaintiffs

6
*DEFENDANT'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT*
831274_2

would have this Court declare the Court-sanctioned cash-management system a fraudulent artifice. Notwithstanding the unreasonableness of Plaintiffs' request, Defendant must respond to Plaintiffs' argument on the "merits." As set forth below, Defendant is entitled to summary judgment on Counts II, III and IV of the Complaint.

### A. TO PREVAIL ON COUNTS II, III, OR IV, PLAINTIFFS MUST DEMONSTRATE, *INTER ALIA*, THAT FLEETWOOD HOLDINGS, INC. DID NOT RECEIVE REASONABLY EQUIVALENT VALUE IN EXCHANGE FOR THE TRANSFERS IT MADE TO DEFENDANT

#### 1. Count II

In Count II, Plaintiffs seek to avoid all transfers made by Fleetwood Holdings, Inc. to Defendant in the four years before Plaintiffs filed their Complaint under 11 U.S.C. § 544(b). 11 U.S.C. § 544(b) merely provides a conduit under which a trustee, debtor in possession or creditor can avoid certain transfers under state law. Thus, Plaintiffs' substantive claim is governed by California's Uniform Fraudulent Transfer Act (Cal. Civ. Code § 3439, *et seq.*). Under California's Uniform Fraudulent Transfer Act, a transfer may be avoided if a proponent can demonstrate actual fraud or constructive fraud. Cal. Civ. Code § 3439.04. Actual fraud is not at issue in Plaintiffs' Complaint; rather, Plaintiffs' allege constructive fraud under Cal. Civ. Code §§ 3439.04(2) and 3439.05.

Under Cal. Civ. Code § 3439.04, a transfer made within four years of the filing of a complaint may be avoided if a proponent can establish: (1) the debtor did not receive reasonably equivalent value in exchange for the transfer; and (2) the debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction or the debtor intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due. Plaintiffs bear the burden of proving each element under Cal. Civ. Code § 3439.04.

Under Cal. Civ. Code § 3439.05, a transfer made within four years of the filing of a complaint may be avoided if a proponent establishes: (1) the debtor did not receive

7

*DEFENDANT'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT*

831274_2

reasonably equivalent value in exchange for the transfer; and (2) the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation. Plaintiffs bear the burden of proving each element under Cal. Civ. Code § 3439.05.

### 1. Count III

Under Count III of their Complaint, Plaintiffs seek to avoid all transfers made by Fleetwood Holdings, Inc. to Defendant in the two years before Debtors filed their Complaint under 11 U.S.C. § 548. Under 11 U.S.C. § 548, a transfer made within two years before the filing of a bankruptcy petition may be avoided if: (1) the debtor received less than a reasonably equivalent value in exchange for such transfer or obligation, and (2) the debtor was insolvent on the date that such transfer was made or became insolvent as a result of such transfer or obligation. Plaintiffs bear the burden of proving each element under 11 U.S.C. § 548.

### 2. Count IV

Sounding in 11 U.S.C. § 550, Count IV merely seeks to recover the proceeds from any transfer avoided under Count II and Count III and need not be addressed substantively. To prevail on Count IV, Plaintiffs must be able to demonstrate sufficient facts to prevail on Counts III and IV.

## B. FLEETWOOD HOLDINGS, INC. RECEIVED REASONABLY EQUIVALENT VALUE IN EXCHANGE FOR THE TRANSFERS MADE TO THE DEFENDANT

### 1. Reasonably Equivalent Value is evaluated using the same standard under the California Uniform Fraudulent Transfer Act and the Bankruptcy Code

To prevail on either Count II or Count III of their complaint, Plaintiffs must demonstrate that Fleetwood Holdings, Inc. did not receive "reasonably equivalent value" in exchange for the transfers made by Fleetwood Holdings, Inc. to Defendant. California's Uniform Fraudulent Transfer Act, as its name implies, is based upon the Uniform Fraudulent Transfer Act. The Uniform Fraudulent Transfer Act's "reasonably equivalent value"

8

language was derived from the bankruptcy code's similar provision of 11 U.S.C. § 548(a)(1)(B)(I) and has appropriated glosses on § 548 for interpretations of the UFTA. *See, e.g. VFB, LLC v. Campbell Soup Co.*, 482 F.3d 624, 630-31 (3d Cir. 2007) (using the same definition of reasonably equivalent value as used under § 548 for interpreting UFTA provision); *In re Image Worldwide, Ltd.*, 139 F.3d 574, 577 (7th Cir. 1998) (stating that "the UFTA is a uniform act, and it derived the phrase 'reasonably equivalent value' from 11 U.S.C. § 548" and for that reason, looked to interpretations of § 548).

Accordingly, in determining whether reasonably equivalent value was received by Fleetwood Holdings, Inc. in exchange for the transfers made to Defendant, we must look both to California's UFTA and 11 U.S.C. § 548 for guidance. *See AFI Holding, Inc. v. Mackenzie*, 525 F.3d 700, 707 (9th Cir. 2008) (Cal.Civ.Code § 3439.04(a)(2) is the equivalent of 11 U.S.C. § 548(a)(1)(B)); *Pajaro Dunes Rental Agency v. Spitters (In re Pajaro Dunes Rental Agency)*, 174 B.R. 557, 579 (Bankr.N.D.Cal. 1994) (Analyzing the reasonably equivalent value standard of 3439.04(a)(2) solely in the context of case law discussing reasonably equivalent value under 11 U.S.C. § 548 and UFTA decisions from other jurisdictions). In light of this, Plaintiffs' claims that Fleetwood Holdings, Inc. did not receive reasonably equivalent value in exchange for its transfers to Defendant under the California Uniform Fraudulent Transfer Act and 11 U.S.C. § 548 will be analyzed jointly.

### 2. Standard for determining reasonably equivalent value.

Plaintiffs contend that the debts paid to Defendant by Fleetwood Holdings, Inc. were on behalf of third-party debtor subsidiaries and that Defendant Fleetwood Holdings, Inc. did not receive reasonably equivalent value in exchange for these payments. To maintain its fraudulent transfer action and avoid the transfers made to Defendant, Plaintiffs have the burden of showing that Fleetwood Holdings, Inc. did not receive reasonably equivalent value in exchange. *Pajaro*, 174 B.R. at 579. A court should "[e]xamine all aspects of the transaction and carefully measure the value of all benefits and burdens to the debtor, direct and indirect." *Smith v. American Founders Financial, Corp.*, 365 B.R. 647, 666 (S.D.Tex. 2007). *See also Harker v. Center Motors, Inc. (In re Gerdes)*, 246 B.R. 311, 313 (Bankr.

S.D. Ohio 2000) (Both direct and indirect benefits should be considered by the Court in determining whether reasonably equivalent value has been received.).

Under *Rubin v. Manufacturers Hanover Trust Co.*, 661 F.2d 979, 991-994 (2d Cir. 1981) and its progeny, where a debtor obtains some clear and tangible benefit through third-party routes, it will be deemed to have received indirect value which can constitute reasonably equivalent value. *Pajaro*, 174 B.R. at 579. *See also Mellon Bank v. Metro Communications, Inc. (In Re Metro Communications, Inc.)*, 945 F.2d 635, 646 (3d Cir. 1991) ("However, in evaluating whether reasonably equivalent value has been given under Section 548, indirect benefits may also be evaluated.").

Under either the indirect value or direct value approach, "a party receives reasonably equivalent value for what it gives up if it gets 'roughly the same value it gave.'" *VFB, LLC*, 482 F.3d at 631 (citations omitted). The focus always is on the economic benefit, if any, flowing to the debtor as a result of the transfer. *See, Rubin*, 661 F.2d at 991.

### 3. As the sole owner of each of the Debtor Subsidiaries, Fleetwood Holdings, Inc. received "roughly the same value it gave" for each of the transfers.

Fleetwood Holdings, Inc. is the sole shareholder of the Debtor Subsidiaries. (Request for Judicial Notice, Ex. 2 at ¶¶ 8-9). Moreover, all materials sold by Defendant to the Debtor Subsidiaries were sold at their fair market value. (Bellaire Decl. ¶ 8). As such, Fleetwood Holdings, Inc.'s overall book value was never diminished by the transfer of funds to the Defendant in exchange for product delivered to the Debtor Subsidiaries. (Request for Judicial Notice, Ex. 2 at ¶¶ 76-77).

If, for example, Debtor Subsidiary Fleetwood Homes of California, Inc. obtained 100 widgets (valued at $1 each) from Defendant then Debtor Subsidiary Fleetwood Homes of California, Inc.'s stock value would increase by $100. Likewise, Fleetwood Holdings, Inc.'s book value, as sole stockholder of Debtor Subsidiary Fleetwood Homes of California, Inc., would also be increased by $100. If Debtor Subsidiary Fleetwood Homes of California, Inc. in turn paid Defendant $100 for the widgets, the book value would be reduced by $100 and

return to the same balance it had before it received the widgets. Fleetwood Holdings, Inc.'s books would also be reduced by $100 and return to the same balance it had before the Debtor Subsidiary received the widgets. Thus, no matter whether Fleetwood Holdings, Inc. paid for the materials produced and delivered by Defendant or whether a Debtor Subsidiary paid for such product, the net effect on the book value of Fleetwood Holdings, Inc. would be the same.

The bottom line is that Fleetwood Holdings, Inc. "received roughly the same value it gave" in each transaction. *VFB, LLC*, 482 F.3d at 631. *See also In re Metro Communications, Inc.*, 95 Bankr. 921, 933 (Bankr.W.D.Pa. 1989), rev'd on other grounds, 945 F.2d 635 (3d Cir. 1991) (Dealing with an analogous situation and finding that transfers by a parent/sole-stockholder to a subsidiary company constitutes reasonably equivalent value because a benefit received by the subsidiary is also a benefit to the parent).

If Fleetwood Holdings, Inc. were able to, after receiving the value and use of the 100 widgets on its book value, to seek the recovery of the $100 it paid for the widgets, as it now contends it is entitled to do, it would be placed in a far superior position than what equity ought to allow.

4. **Fleetwood Holdings, Inc.'s payments to Defendant resulted in a discharge of Fleetwood Holdings, Inc.'s own debt to the debtor subsidiaries, and, accordingly, it received reasonably equivalent value.**

Even if one were to put aside the ownership relationship between Fleetwood Holdings, Inc. and the Debtor Subsidiaries, Fleetwood Holdings, Inc. received reasonably equivalent value in exchange for its transfers to Defendant on behalf of the Debtor Subsidiaries.

In *In re Newtowne, Inc.*, 157 B.R. 374, 378-79 (Bankr.S.D.Ohio 1993), the court identified three common scenarios in which a debtor's discharge of a third party's debt may be for reasonably equivalent value. The first is when the debtor's payment of a third-party's debt results in a discharge of the debtor's own debt to the third party. *Id.* at 379. The second

11
DEFENDANT'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT
831274_2

scenario is when the debtor and the third party are so "related or situated that they will share an identity of interests because what benefits one will…benefit the other to some degree." *Id.* (quoting *In re Pembroke Dev. Corp.,* 124 B.R. 398, 400 (Bankr. S.D.Fla. 1991). The third scenario is when a debtor "enjoys the benefits of the goods or services it bought for its principal." *Id.*

Each of the three scenarios is applicable in the present matter. First, Fleetwood Holdings, Inc.'s payment of a Debtor Subsidiary's debts to Defendant resulted in a discharge/credit/account receivable against Fleetwood Holdings, Inc.'s debt to such Debtor Subsidiary. In *Uiterwyk Corporation v. Maher Terminals, Inc. (In re Uiterwyk Corporation)*, 75 B.R. 33 (Bankr.M.D.Fla. 1987) discussed the concept of reasonably equivalent value in the context of payments made by a debtor to discharge the debt of an unrelated third-party. The debtor in *Uiterwyk* served as an agent for two shipping companies. The debtor paid a third-party to provide certain services to the two shipping companies' vessels. The debtor paid the third-party out of its own funds. In exchange, the debtor would credit its accounts with the two companies with the amounts it had paid on its behalf. The Court held that the debtor received the benefit of having its debt to the two shipping companies adjusted by the amount it paid the third-party: "A Debtor's discharge of a third party's debt which also discharges its own debt to that third party is sufficient to establish equivalent value." *Id.* at 34. *See also, Coors of N.Miss v. Bank of Longview (In re Coors of N. Miss.),* 66 B.R. 845, 862 (Bankr.N.D.Miss. 1986 (A reduction in debt is sufficient to establish equivalent value).

Fleetwood Holdings, Inc. debited a subsidiaries account each time Fleetwood Holdings, Inc. made a payment on a subsidiaries. At the end of each month, these debits were reconciled against the accounts receivable taken in by Fleetwood Holdings, Inc. on behalf of the subsidiaries and netted out. Like the debtor in *Uiterwyk*, on the books, Fleetwood Holdings, Inc.'s obligations to a third-party (i.e. a debtor subsidiary) were credited and discharged each time Fleetwood Holdings, Inc. made a payment on the third-party's behalf. The creation of such a receivable coupled with a credit towards any amounts

12

owed by Fleetwood Holdings, Inc. to a debtor subsidiary constitutes reasonably equivalent consideration for the payments made by Fleetwood Holdings, Inc.

Second, Fleetwood Holdings, Inc. and the Debtor Subsidiaries are so intertwined, by virtue of each of their obligations to Bank of America, N.A. under a Secured Credit Facility, that Fleetwood Holdings, Inc. enjoyed the benefits of the product Defendant delivered to the Debtor subsidiaries.

Where a debtor and third party "are so related or situated that they share an identity of interests because what benefits one will, in such case benefit the other to some degree" courts will find reasonably equivalent value. *Pembroke Development Corp. v. Commonwealth Savings & Loan Assoc. (In re Pembroke Development Corp.)*, 124 B.R. 398, 400 (Bankr.S.D.Fla. 1991); citing *In re Minnesota Utility Contracting, Inc.*, 101 B.. 72 (Bankr.D.Minn. 1989).

It appears from the Declaration of Andrew M. Griffiths and the Cash Management Motion that Fleetwood Holdings, Inc. is not engaged in any income-producing business. Notwithstanding this, Fleetwood Holdings, Inc. is an obligor under the Secured Loan Facility with Bank of America. The Debtor Subsidiaries are also obligors under the Secured Loan Facility. Without the manufacturing and sale of product by the Debtor Subsidiaries, it is unclear how Fleetwood Holdings, Inc. would pay down its debt service to Bank of America. Without receiving product from suppliers such as the Defendant, it is also unclear how the Debtor Subsidiaries would manufacture and sell product. Accordingly, Fleetwood Holdings, Inc. received a tangible indirect benefit, i.e. payment towards its debt service to Bank of America by the Debtor Subsidiaries, as a result of Defendant's production and delivery of product to the Debtor Subsidiaries.

Third, and for the same reasons set forth above, Fleetwood Holdings, Inc. enjoyed the benefit of the materials provided to the Debtor Subsidiaries by the Defendant.

///

///

///

## C. EVEN IF FLEETWOOD HOLDINGS, INC. DID NOT RECEIVE REASONABLY EQUIVALENT VALUE FOR ITS PAYMENTS TO DEFENDANT, IT CANNOT PROVE THE REMAINING ELEMENTS OF A CONSTRUCTIVELY FRAUDULENT TRANSACTION

Even if Plaintiffs could demonstrate that Fleetwood Holdings, Inc. did not receive reasonably equivalent value for its transfers to Defendant, Plaintiffs are unable to present any evidence establishing the remaining elements of their claims under the California Uniform Fraudulent Transfer Act and 11 U.S.C. § 548. Specifically, Plaintiffs are unable to meet their burden that Fleetwood Holdings, Inc., at the time of each transfer, was engaged or was about to engage in a business or a transaction for which the remaining assets of Fleetwood Holdings, Inc. were unreasonably small in relation to the business or transaction or that Fleetwood Holdings, Inc. intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due. Plaintiffs are likewise unable to carry their burden of proving Fleetwood Holdings, Inc. was insolvent at the time of each transfer or that Fleetwood Holdings, Inc. became insolvent as a result of each transfer. Accordingly, summary judgment in favor of Defendant and against Plaintiffs on Counts II, III and IV.

## V. CONCLUSION

Debtor Fleetwood Holdings, Inc. received reasonably equivalent value for each of the transfers it made to Defendant. Accordingly, the transfers are not fraudulent under the California Fraudulent Transfers Act or under 11 U.S.C. § 548. As such, Summary Judgment against Plaintiffs and in favor of Defendant is appropriate, as a matter of law, on Counts II, III, and IV of Plaintiffs' Complaint.

DATED: September 17, 2009    GIBBS, GIDEN, LOCHER, TURNER & SENET LLP

By: _____
Richard J. Wittbrodt
Lynsey M. Eaton
Attorneys for Creditor
TRISTAR DISTRIBUTING. INC.

# ELECTRONIC PROOF OF SERVICE

**In Re: Fleetwood Enterprises, Inc., et al. (Debtors)**
**Case No. 09-14254-MJ \ Adv. Pro. No.: 6:09-ap-01380-MJ**

I, M. Esther Juarez, declare:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Gibbs, Giden, Locher, Turner & Senet LLP, 1880 Century Park East, 12th Floor, Los Angeles, California 90067-1621. On September 17, 2009, I served the document(s) described as: **TRISTAR DISTRIBUTING, INC.'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** as follows:

☒ **BY ELECTRONIC ACCESS** Pursuant to Electronic Filing Court Order, I hereby certify that the above document(s) was uploaded to the Mandatory Electronic Filing through CM/ECF website and will be posted on the website by the close of the next business day and the webmaster will give e-mail notification to all parties.

☒ [Federal]   I declare that I am employed in the offices of a member of the State Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on September 17, 2009, at Los Angeles, California.

_____
M. Esther Juarez